**SO ORDERED.**

**SIGNED this 16 day of August, 2010.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: | ) |
| | ) |
| BRYANT MANOR, LLC, | ) Case No. 09-41958 |
| | ) Chapter 11 |
| Debtor. | ) |
| _____ | ) |
| | ) |
| BRYANT MANOR, LLC., | ) |
| | ) Adv. Proc. 10-7026 |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BANK OF AMERICA, N.A., AS SUCCESSOR BY | ) |
| MERGER TO LASALLE BANK NATIONAL | ) |
| ASSOCIATION, AS TRUSTEE FOR THE | ) |
| REGISTERED HOLDERS OF J.P. MORGAN CHASE | ) |
| COMMERCIAL MORTGAGE SECURITIES CORP., | ) |
| COMMERCIAL MORTGAGE PASS-THROUGH | ) |
| CERTIFICATES, SERIES 2005LDP5, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

### MEMORANDUM OPINION AND ORDER DENYING
### MOTION TO DISMISS OF BANK OF AMERICA

This matter is before the Court on Defendant Bank of America's ("Bank of America") Motion to Dismiss.[1]  Bank of America claims this adversary proceeding must be dismissed because Plaintiff/Debtor Bryant Manor, LLC ("Debtor") fails to allege sufficient facts to state a claim for relief as a matter of law**.**  The Court has jurisdiction to hear this proceeding pursuant to 28 U.S.C. § 157(c), as it is a matter that is related to a case under the Bankruptcy Code.[2]

## I.  STANDARD FOR EVALUATING MOTION TO DISMISS

Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings.  In evaluating a motion to dismiss for failure to state a claim, all well-pleaded allegations will be accepted as true and will be construed in the light most favorable to plaintiff.[3]  "Courts must evaluate whether the complaint contains enough facts to state a claim to relief that is plausible on its face."[4]  "The concept of 'plausibility' at the dismissal stage refers not to whether the allegations are likely to be true, the court must assume them to be true."[5]  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"[6]

---

[1]Doc. 5.

[2]Debtor claims that this matter is a core proceeding under 11 U.S.C. § 157(b)(2).  However, it does not appear that the claims in this case, which seek a monetary judgment based on state law claims of misrepresentation and breach of a duty of good faith and fair dealing, constitute core matters.  The Court will require the parties to address this issue at the pretrial conference.  If the Court determines the matter is not a core proceeding, the parties shall be prepared to indicate whether they consent to this Court entering a final order and judgment pursuant to 28 U.S.C. § 157(c)(2).

[3]*Casanova v. Ulibarri,* 595 F.3d 1120, 1124 (10th Cir. 2010).

[4]*Id.*

[5]*Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191-92 (10th Cir. 2009).

[6]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## II.    FINDINGS OF FACT

The Court makes the following findings of fact in connection with this Motion to Dismiss. As previously noted, the Court must accept all well-pleaded allegations as true and must construe all facts in the light most favorable to the Debtor.

Bryant Manor, LLC ("Debtor") is a Kansas limited liability company that owns and, prior to October 20, 2009, operated an apartment complex in Kansas City, Kansas. Defendant Bank of America, N.A. ("Defendant") is the holder of a Note secured by a Mortgage on the property. Defendants C.W. Capital Asset Management, L.L.C. ("C.W. Capital") and CapMark Financial Group, Inc. ("CapMark") operated as servicing agents for Defendant during the time period leading up to the claims in this adversary proceeding.

On June 3, 2009, Debtor, through its representative Brian Rugley, entered into discussions with Marie Moran, Client Relations Manager for CapMark, which was then the servicing agent for Bank of America. The purpose of the discussion centered on deferring the June 2009 loan payment and potentially restructuring the loan due to financial difficulties Bryant Manor was experiencing. On June 18, Ms. Moran informed Mr. Rugley that the only way to have meaningful discussions relative to restructuring the loan would be for Debtor to default on the loan, at which time the loan would be assigned to the Special Assets department of C.W. Capital, who was the special servicer for Bank of America. She asserted only the Special Assets department had the authority to restructure the loan with Bryant Manor. According to Mr. Rugley, Debtor allowed the loan to become delinquent based upon the statement from Ms. Moran, in hopes of being able to restructure the loan once servicing was transferred to C.W. Capital.

3

On July 10, 2009, Mr. Rugley again contacted Ms. Moran and requested that the loan be restructured. Ms. Moran sent Mr. Rugley an email requesting certain documents be forwarded to C.W. Capital. Ms. Moran informed Mr. Rugley that he would be contacted concerning the loan modification.

On August 8, 2009, Mr. Rugley received a telephone call from Erik Weinberg, Loan Analyst for C.W. Capital. Mr. Weinberg advised that he would be handling the loan restructuring and asked Mr. Rugley to meet him at the property. On August 12, 2009, Mr. Rugley received a "pre-negotiation" letter agreement that Bryant Manor had to execute before C.W. Capital would agree to enter into any restructuring discussions.

On September 25, 2009, Mr. Rugley was notified by Mr. Weinberg that the requested restructuring had been rejected. Mr. Weinberg did indicate that C.W. Capital could reduce Debtor's monthly payment by $4,000 for 24 months (a $96,000 savings for the short-term), as Debtor had requested, but to receive that reduction Debtor would be required to immediately provide C.W. Capital $181,000 prior to receiving this reduction.[7]

On September 29, 2009, C.W. Capital again informed Debtor that a $181,000 payment was required to receive the requested modification to the payments, and Debtor informed C.W. Capital that it could not obtain that amount of money. Thereafter, C.W. Capital and Debtor were unable to come to an agreement on the loan restructuring, and the loan remained delinquent until Bank of America commenced a foreclosure action in the District Court of Wyandotte County, Kansas on October 20, 2009. Upon the filing of the foreclosure action, because Debtor had consented to the

---

[7]This judge is not a financial wizard, but even she can see this offer was essentially worthless to a cash-strapped company. If a debtor has immediate access to $181,000 in cash, it seems somewhat unlikely that they would need to reduce their payments by $96,000 over 24 months.

appointment of a receiver in the event of default by executing the mortgage documents, Ronald Nolan of Nolan Real Estate was appointed receiver, and immediately assumed control of the property, including rents and some books and records.

Soon after the filing of the foreclosure action and appointment of the receiver, Debtor filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. Debtor sought the removal of the receiver on two occasions, but each of those requests was denied by the Court. Debtor filed this adversary proceeding on April 28, 2010, claiming that Bank of America, acting through CapMark, had negligently misrepresented that defaulting on the loan was a viable approach to restructuring the loan. Debtor also claims that Bank of America, acting through C.W. Capital, failed to negotiate in good faith regarding the restructuring of the loan, and breached a duty of good faith and fair dealing.

## III.   CONCLUSIONS OF LAW

Bank of America has moved to dismiss this adversary proceeding on three grounds: (1) that Debtor's claims are barred by the Kansas Commercial Statute of Frauds; (2) that Debtor's claims are barred by the economic loss doctrine; and (3) that Debtor has failed to plead the essential elements of its misrepresentation claim.

### A.   Debtor's claims are not barred by the Kansas Commercial Statute of Frauds

The first argument raised by Bank of America is that both of Debtor's claims are barred by the Kansas Commercial Statute of Frauds. The Kansas Commercial Statute of Frauds is set forth in K.S.A. 16-118. According to K.S.A. 16-118(a),

> A debtor or a creditor may not maintain an action for legal or equitable relief or a defense, based in either case upon a failure to perform on an alleged credit agreement, unless the material terms and conditions of the agreement are in writing and signed by the creditor and the debtor.

5

The term "credit agreement" is defined as "an agreement by a financial institution to lend or delay repayment of money, goods or things in action, to otherwise extend credit or to make any other financial accommodation."[8]  However, the statute makes clear that a credit agreement specifically does not include the following agreements:

> Open-end or closed-end promissory notes, real estate mortgages, security agreements, guaranty agreements, letters of credit, deposit account agreements, agreements in connection with deposit accounts for the payment of overdrafts, agreements in connection with student loans insured or guaranteed pursuant to the federal higher education act of 1965 and acts amendatory thereof and supplementary thereto, and agreements in connection with "lender credit cards" as defined in the uniform consumer credit code.[9]

The intent of K.S.A. 16-118 is "to insure there is written evidence of credit agreements and to prevent lawsuits based on disputed oral agreements to lend money or the disputed terms for lending the money."[10]  Bank of America argues that the claims based upon oral representations by representatives of CapMark and C.W. Capital are barred by K.S.A. 16-118.

The initial hurdle facing Defendant's argument is the fact that this case deals directly with the terms, negotiations, and payments on a promissory note and real estate mortgage.  K.S.A. 16-117(a) specifically provides that for the purposes of the Kansas commercial statute of frauds, a "credit agreement" does not include a promissory note or real estate mortgage.  Because the allegations in this case all surround a promissory note and real estate mortgage, K.S.A. 16-118 is simply inapplicable.[11]

---

[8]K.S.A. 16-117(a).

[9]*Id.*

[10]*Bittel v. Farm Credit Services of Cent. Kansas*, 265 Kan. 651, 658 (1998).

[11]Debtor also claims that any alleged "credit agreement" was not entered into with a "financial institution" which is defined as "a bank, savings and loan association, savings bank or credit union."  K.S.A. 16-117(d).  Debtor argues that because all conversations regarding the misrepresentation were with CapMark, K.S.A. 16-118 does not apply

6

Even if the Court were to find that the exclusions in K.S.A. 16-117(a) did not apply, Bank of America's reliance on K.S.A. 16-118 is still misplaced. According to Bank of America, "[t]he allegations contained in Debtor's Complaint are clear and allege an oral agreement with Lender to restructure the Debtor's loan and delay its repayment."[12] The Court disagrees. There are no allegations in the Complaint where Debtor alleges it reached an oral agreement with any party concerning the restructuring or repayment of the Debtor's loan. To the extent such an allegation were raised, it might well fall within the confines of K.S.A. 16-118, except for the obvious issue that K.S.A. 16-117(a) specifically exempts all real estate mortgages and promissory notes from the definition of credit agreement.

Debtor's Complaint does not seek damages arising out of any alleged oral credit agreement. Instead, it seeks damages related to alleged misrepresentations made about the proper course of conduct to follow in relation to the already existing written contract. Debtor claims that Bank of America "induced the Debtor to act to its detriment by misrepresenting facts surrounding the Note and the Mortgage."[13] There is no question here about whether Bank of America agreed to lend money, or the terms and conditions of any such agreement, which is the purpose behind K.S.A. 16-118.[14] The allegations in Count I are simply that Plaintiff was damaged by the alleged representations made by CapMark that Debtor would be able to obtain a restructuring of the note

---

as CapMark is not a "financial institution." However, as Bank of America correctly notes, if in fact any credit agreement had been reached, it would not have been between Debtor and CapMark, but rather between Debtor and Bank of America. CapMark was simply acting as the servicing agent for Bank of America, which would have been the other party to any agreement. Because the Court has determined that there was no separate credit agreement and that K.S.A. 16-118 does not apply here, however, this issue is essentially moot.

[12]Bank of America's Reply Brief in Support of Motion to Dismiss (Doc. 12) at 2.

[13]Debtor's Response Brief in Opposition to the Motion to Dismiss (Doc. 11) at 7.

[14]*See Bittel*, 265 Kan. 658.

if defaulted on the loan. The allegations in Count II are simply that C.W. Capital failed to comply with a duty of good faith and fair dealing during Plaintiff's attempt to renegotiate the pre-existing loan. Bank of America relies heavily on *Bittel v. Farm Credit Services of Cent. Kansas* in support of its theory that K.S.A. 16-118 is controlling. In *Bittel*, the debtors brought an action against the lender for damages allegedly caused by the breach of an alleged oral agreement to renew a farm loan and for negligently representing that the loan would be renewed. The Court, ruling on a fully developed summary judgment motion instead of a motion to dismiss, held that the oral representations of an agreement to extend credit into the future were not actionable based upon K.S.A. 16-118. As noted by the *Bittel* court, "[t]he legislature has acted to bar actions on oral credit agreements, which is exactly what the Bittels are seeking to enforce."[15]

In this case, however, Plaintiff is not seeking to enforce the terms of any credit agreement, nor is it otherwise claiming that any credit agreement was ever reached, nor is it trying to enforce such an agreement (as was the case in *Bittel)*. Instead, Plaintiff is claiming that CapMark induced it to engage in a course of conduct that resulted in damages to it, not that CapMark made any promises to restructure the note or delay payments. If Debtor were suing on the specific terms of some alleged oral agreement, the outcome may be different. However, given the narrow claims raised by Debtor, this case is not subject to the Kansas commercial statute of frauds, K.S.A. 16-118.

**B.      The economic loss doctrine does not bar Plaintiff's claims.**

----

[15]*Id.* at 659.

Bank of America next argues Plaintiff's claims are barred by the economic loss doctrine.[16] According to Bank of America, "[p]ursuant to the economic loss doctrine, a tort claim is prohibited where a plaintiff's claimed losses are purely economic."[17] Although the economic loss doctrine is a valid defense to certain tort claims in Kansas, Bank of America is seeking to stretch its protections to cover a claim that is clearly outside what the economic loss doctrine is intended to protect.

"The economic loss doctrine states that a buyer of defective goods cannot sue in tort where the injury consists only of damage to the goods themselves."[18] The doctrine was originally considered only a products liability doctrine, but its application has been extended to other areas.[19] However, the policy behind the doctrine has remained the same—"The doctrine is designed to prevent a party from asserting a tort remedy in circumstances governed by the law of contracts."[20]

For example, in *Prendiville v. Contemporary Homes, Inc.*, plaintiffs brought a negligence suit against a residential contractor when their basement flooded shortly after they moved into their new home. The Kansas Court of Appeals held that the economic loss doctrine applied to the claim against the contractor where the rights and liabilities of the parties were governed by contract and an express warranty. Therefore, the tort claim was barred by the economic loss doctrine, where the only damages were economic or to the property itself.

---

[16]Although Bank of America raised this issue in its initial brief, it offered no rebuttal to Debtor's explanation as to why the economic loss doctrine was inapplicable in this case. Bank of America's reply brief is silent on the applicability of the economic loss doctrine, and it appears to have abandoned this argument.

[17]Bank of America's Brief in Support of Motion to Dismiss (Doc. 6) at 6.

[18]*Prendiville v. Contemporary Homes, Inc.*, 32 Kan. App. 2d 435, 438.

[19]*Id.*

[20]*Id.*

9

Similarly, in *K.R. Smith Trucking, LLC v. Paccar, Inc.*,[21] the plaintiff purchased a Peterbilt Truck that had been designed and manufactured by the defendant. While the truck was being operated by the owner, it suddenly caught fire and was engulfed in flames. The driver of the truck escaped any injury, but the truck was destroyed. The plaintiff brought several claims against the defendant, including a strict liability claim based in tort. The court held that "[t]he economic loss doctrine prevents a consumer or commercial buyer from suing in tort when the claims are based in contract."[22]

The factual allegations in this case clearly fall outside the protective umbrella of the economic loss doctrine. This case does not involve the sale of goods or services, nor is it a case where Plaintiff is seeking to circumvent claims that could be brought under contract law by instead bringing them as tort claims. And as Plaintiff correctly argues, a claim for misrepresentation is almost always going to produce only economic damage. There is no suggestion in Kansas law that the economic loss doctrine was intended to erase such claims.[23] The Court finds that the facts in the Kansas cases dealing with the economic loss doctrine are clearly distinguishable from those in this case, and that the economic loss doctrine does not operate as a bar to Debtor's claims.

C. **Plaintiff's Complaint sufficiently sets forth the necessary elements for its misrepresentation claim.**

The third argument raised by Bank of America in support of its motion to dismiss is that Plaintiff's Complaint fails to plead the essential elements of its misrepresentation claim. To state

---

[21]2009 WL 3488064 (D. Kan. 2009).

[22]*Id.* at 7.

[23]The Court also notes that were it to adopt Bank of America's extremely broad approach, all tort claims for conversion, embezzlement, larceny, etc. would apparently be barred if the plaintiff's only loss is economic.

a claim for negligent misrepresentation under Kansas law, a plaintiff must allege that (1) the defendant made a false statement regarding a transaction in which it had a pecuniary interest; (2) the defendant failed to exercise reasonable care to ascertain or communicate the accuracy of the statement; (3) the plaintiff justifiably relied on the defendant's statement; and (4) the plaintiff thereby incurred loss.[24]  In regard to a claim for negligent misrepresentation, the Kansas Supreme Court has explained that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[25]

The requirements for pleadings are generally governed by Fed. R. Civ. P. 8.[26]  According to Rule 8, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."[27]  "Each allegation must be simple, concise, and direct.  No technical form is required."[28]  "Pleadings must be construed so as to do justice."[29] "[U]nder the 'plausibility' standard that now guides the court, a complaint must contain sufficient factual allegations to give fair notice to defendants of the grounds of the claim against them."[30]

---

[24]*Evolution, Inc. v. SunTrust Bank*, 342 F. Supp. 2d 964, 971 (D. Kan. 2004).

[25]*Mahler v. Keenan Real Estate, Inc.*, 255 Kan 593, 604 (1994).

[26]Fed. R. Civ. P. 8 is made applicable in this adversary proceeding by Fed. R. Bankr. P. 7008.

[27]Fed. R. Civ. P. 8(a)(2).

[28]Fed. R. Civ. P. 8(d)(1).

[29]Fed. R. Civ. P. 8(e).

[30]*Wedel v. Centera Bank*, 2010 WL 2949973 (D. Kan. July 22, 2010).

11

The Court finds this Complaint contains sufficient information to comply with the requirements of Rule 8. Count I of the Complaint, combined with the allegations included prior to Count I that are incorporated by reference, clearly set forth the alleged conduct on the part of Bank of America, CapMark and C.W. Capital that give rise to the claim. Debtor's Complaint specifically alleges that "CapMark, on behalf of [Bank of America], negligently misrepresented this course of action as a viable approach to restructuring the Loan" and that "Debtor suffered significant damages as a result of its reliance on such representation."

The allegations set forth in the Complaint are sufficient to give Bank of America sufficient notice of the claims against it, and also to provide the Court with enough information to determine that relief is plausible in this case. That is all that is required under Rule 8.

> ### D. Bank of America's claims regarding reliance and its duty to modify the loan are not properly before the Court.

The final arguments raised by Bank of America are that prior testimony in the underlying bankruptcy case demonstrates that Debtor cannot ultimately prevail on its Complaint because Debtor could not have actually relied on any advice by CapMark in allowing its loan to go delinquent. Bank of America also argues that it was under no legal obligation to restructure the loan. Specifically, Bank of America notes that Mr. Rugley testified at an earlier hearing that Bryant Manor lacked the funds to make the June mortgage payment, and would have defaulted on the loan regardless of the alleged misrepresentation.

This, according to Bank of America, shows that Debtor cannot demonstrate that it relied on the advice of CapMark in allowing the note to go into default (and thus any damages claimed do not flow from the alleged misrepresentation). Bank of America also alleges that once Mr. Rugley

informed CapMark that Debtor could not make the June 2009 loan payment, an anticipatory breach of contract occurred, and Bank of America's obligation, if any, to restructure the note ended.

The Court finds that these arguments do not provide a basis for granting the motion to dismiss for two reasons. First, the claims were not raised by Bank of America in its initial brief, but only in its reply brief. The Court finds those arguments were not properly raised, and Debtor was not given an opportunity to respond in its brief opposing the summary judgment motion.

In addition, both of these arguments rely on matters found outside of the pleadings, as both are based upon testimony of Mr. Rugley. Although Rule 12(d) does provide the Court the option of allowing extrinsic matters to be considered by converting the motion to dismiss under Rule 12(b) to a motion for summary judgment under Rule 56, the Court is not inclined to do so in this case. Instead, the Court will exclude the references to Mr. Rugley's testimony from its consideration of this motion to dismiss. Bank of America is free to raise those arguments in a properly supported summary judgment motion, if it so wishes, but the Court will not convert the current motion to dismiss into a motion for summary judgment.

Bank of America does claim that the pleadings provide evidence that Debtor admitted it could not make the loan payments and would have defaulted on the loan anyway. In support of this contention, Bank of America cites to paragraph 8 of the Complaint, and pages 2-3 of Debtor's response in opposition to the motion to dismiss. In both instances, Debtor states:

> On June 3, 2009, Debtor, through its representative Brian Rugley, entered into discussions with Marie Moran, Client Relations Manager for CapMark with respect to having the June, 2009 loan payment be deferred due to challenges Debtor had encountered beginning in March, 2009 with tenant occupancy and rent collection. On June 5, 2009, Ms. Moran advised Mr. Rugley that deferral of June's Loan payment was not possible. Up until this point, Debtor had made its Loan payments for the previous five years.

Contrary to the claims made by Bank of America, at no point in the language specifically relied on by the Bank does Debtor state that it could not make the June 2009 payment and that it intended to or would default on the loan. Debtor only admits that it entered into discussions with CapMark about deferring the loan payment, that the request for deferral was denied, and that Debtor had made all of its loan payments for the previous five years. Seeking a deferral due to financial hardship does not necessarily equate to being incapable of making the payment. Although Bank of America may infer from that paragraph that Debtor could not make the payment and would have defaulted anyway, the Court is not permitted to make such an inference in the context of this motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Bank of America's Motion to Dismiss. The Court finds that neither the Kansas commercial statute of frauds nor the economic loss doctrine is applicable to this case and neither act as a bar to Debtor's claims. The Court also finds that the Complaint contains sufficient information to state a claim upon which relief can be granted. Finally, the Court finds that Bank of America's arguments concerning Debtor's lack of reliance and that Bank of American had no obligation to restructure the note after an alleged anticipatory breach on the part of the Debtor are not properly before the Court. Those arguments may be raised in a properly supported motion for summary judgment, if Bank of America elects to file such a motion.[31]

---

[31]The deadline for such a dispositive motion is September 13, 2010.

14

**IT IS, THEREFORE, BY THE COURT ORDERED** that Defendant Bank of America's Motion to Dismiss[32] is denied.  The Scheduling Order[33] issued with the input of both counsel governs these proceedings, as well as the companion Objection to Bank of America's Claim,[34] and the Court reminds counsel that the Adversary Proceeding and associated contested matter are set for a final Pretrial Conference on **August 30, 2010**.

###

---

[32]Doc. 5.

[33]Doc. 14 in the Adversary Proceeding, Doc. 100 in the main bankruptcy case.

[34]Doc. 82.